Mr. Joffrey, you ready? Mr. Manning, you ready? Mr. Joffrey, please. Welcome to the Fifth Circuit. Good morning, Your Honor. Good morning. Omar Joffrey for the lead plaintiff. May it please the court. In the proceedings below, the district court credited confidential witness Threes' allegation that Mr. Young, the CFO, frequently went to the business office between February of 2018 and May of 2018, several months before the class period began and the false statements that there was no dispute that that allegation was credited based on that confidential witness's account. However, the district court then inferred that that meant that either Mr. Young had a mistaken belief that the receivables that he spoke about were collectible or it raised the thought inference that he understood the importance of the receivables and collecting them but went there to quote-unquote stimulate the collection efforts. Even if we assume that these inferences can be credited, in Spitzberg v. Houston American Energy, the same arguments were made about the subjective beliefs of the defendants and the fact that they really believed that the oil contained, sorry, that the well contained oil, the exploratory well, and that the other witness was just simply wrong when the witness said that there were, the geological testing showed that there was no oil whatsoever. The court said that even if it assumed that this was true, all it did was create a tie of inferences and if there is a tie of inferences, then that means that the plaintiff wins at the pleading stage. That is all that those inferences would be. But beyond that, your honor, I think the second point about this, which is really important, is that in the Supreme Court's case, Telabs v. Maker Issues and Rights, where the securities fraud claims were set, which is the plaintiff has to plead on the face of the pleadings, that the inference is cogent and compelling, and as cogent and compelling as any non-inference of scienta or an inference of innocence, there the court said that it has to be, the inferences have to be drawn based on the face of the pleadings. And in Berry v. Intervoice, which is a Fifth Circuit case, I believe from 2005, the court has said that while the pleading standards for scienta are elevated, that doesn't mean that the court gets to resolve disputed issues of fact, or it doesn't provide the district courts with a license to just assume facts that are, for instance, asserted by a defendant in a motion to dismiss. So to go back to the main point here, which is confidential witness trees allegation, I believe, quote-unquote, this is straight from the defendants' motion to dismiss, where they said that his presence in the office meant that, quote, he believed the accounts were collectible, and was thus, quote, spending time on this process. The trouble with this is that we have no idea what Mr. Young actually believes. He's never been deposed. We have no idea whether this is actually true. It's just a statement made in somebody's brief, and I believe on pages 43 to 44 of our opening brief, we have citations from across jurisdictions, across circuits, across geographical spaces in the country that have said that if somebody comes and makes an assertion in a brief, that's not enough to survive even on summary judgment. And I think that's what is really important to understand why there is an error here, not just based on the circuit's precedent, but as a practical matter, what it would entail if someone comes in a brief, asserts a fact, the district court credits it, and tosses the case out and says, it's over, because we have this elevated pleading standard. Because despite the elevated pleading standard, the complaints allegations still need to be treated as true. Mr. Jaffray, I understand the complaints allegations in the confidential witness as to Young, but so if we could just bracket that for a second, I realize that's gonna be central to your argument. As to the other individual defendants, though, you have nothing, as I can understand, that connects them to this alleged fraud, right? So Fleming and Klein, what possible basis would there be for keeping them in the case? So your honor, I think that there's two things that I would say. First is, I think Mr. Young is closest to the heart of what we allege is the fraud, because the district court has credited that he was there and was micromanaging this collections effort. So yes, the claims against him are stronger. The issue with Mr. Klein and Mr. Fleming is the fact that it's inconceivable that if Mr. Young, the CFO, would know something that Mr. Klein, as another CFO who served both as a CFO before Mr. Young was there, and worked underneath him while Mr. Young was CFO, would not know this, or that Mr. Young would not share this information with him, or this information with the CEO. And there is a case, Christine Asia Company versus Yun Ma, it's the Second Circuit decision from 2017, where basically I think the question that you raised was addressed, which is Jack Ma, the CEO of Alibaba, was not alleged to have, you know, been sort of had his hands all over the issue that was at the center of the dispute, but very senior managers of the company did know, and the Second Circuit held that it would be inconceivable that they wouldn't tell Mr. Ma about this, given the So, again, I'm not trying to say that just because one defendant knows, the others must know. I think here the issue is this was a very critical component for the business. It is the reason why it ultimately went bankrupt, and therefore it's inconceivable that Mr. Fleming and Mr. Klein, who both also served as the chief financial officer of Nobelist at various times, would not know this information. The other thing, I think, is the special circumstances test, which over here, you know, that's the other issue that we have on appeal, and I think here, both the District Court and the report and recommendation had said that that test doesn't apply because Nobelist was a large company. The trouble with that is there's nothing in the record to suggest how many employees Nobelist really does have, but even if we say that we have no idea, you know, what the size of the company is, it doesn't mean that you don't get to see whether the other factors would matter. So, for instance, one of the factors that I mentioned, whether the subject of the fraud is vital to the company's survival or is critical to the company. In Nathanson v. Zonagin, which is, I believe, one of the first cases in the circuit that looked at this test, what mattered is that it was one product and it was one patent. The other factors, while present, were not this positive, and I don't believe that the court has ever held that the company must be large before it can take a look at some of these other factors. So, for instance, to go back to this, your question about Mr. Fleming and Mr. Klein, when Mr. Young was making what we consider obviously false statements about how ASC 606 applied, Mr. Fleming was present during these earnings conference calls, and he never made any effort to correct him. And, again, based on the circuit's own precedent, in Berry v. Intervoice, the circuit said that one defendant cannot sit silently while another one makes false statements in an earnings conference call and escape liability for it, and that just didn't happen once. Mr. Fleming sat repeatedly in these earnings conference calls, and he never corrected any of the false statements that Mr. Young had made that would have been readily apparent to anybody who understood that this accounting rule, which would be ASC 606 on his face, does not apply to any transactions that occurred before January of 2018. So, let's go back to Mr. Young. Again, I understand that's the part of the case, and I also understand the statement that he makes on this conference call about expecting to collect 100% of the aged account receivables, obviously the core of the case. Why is that not a forward-looking statement protected by the safe harbor? So, Your Honor, the thing is, I think that even if you assume that the statement about him saying we will collect 100% of the receivables, which is the rest of the balance, even if it is forward-looking, the trouble here is that he did not just make forward-looking statements. So, for instance, the statement where Mr. Young said that we had already put in initiatives in place that had already started to make a difference, there's nothing forward-looking about that. In the same conference call, I believe, that you just mentioned, where I believe, you know, he had talked about setting a target for 20 million, he had also stated that the outstanding balance. So, similar to Spitzberg, this is a mixed statement case, and when you have mixed statements, that is, some statements which are forward-looking and others that are not, with respect to at least the statements that are not forward-looking, the safe harbor doesn't apply. And what's the best allegation in the complaint that the past-looking statements, the backward-looking statements, were false? Because they were making efforts, right, to recover these AR, and they had done something, right, so it wasn't like they had done nothing, and they had, or maybe that is your allegation, maybe you're saying that they, in fact, had said they were doing something, and, in fact, they were doing nothing. Is that the theory? I didn't see you allege that. I think, if you go back to what the district court said about the inference, for instance, that he went there to stimulate the collections, well, he went there to stimulate the collections efforts because there was a problem, and he was not honest and truthful about the scale and magnitude of the problem, given the ultimate write-down, which is 72 million, I believe, as of today. So, I think, also, Your Honor, I don't want to concede that somehow we're saying that those forward-looking statements, which are brazenly false, we're going to collect 100% of the receivables, are somehow not actionable. Forward-looking statements can also be actionable, so long as you say that sufficient or meaningful cautionary statements were not provided, or the defendants acted with scienter. And here, there are no cautionary statements that would be meaningful. What happened in the proceedings below is that the defendants had argued that, because the statements were made in an earnings conference call about earnings, everything was protected by the safe harbor, and that's just not how this safe harbor is applicable. It's the burden is on the defendants to show that the safe harbor applies, ultimately, once you get beyond discovery and, say, if you have a trial. So, here, the issue is, they never pointed to what cautionary statements would have warned investors. Didn't the conference call start with the standard cautionary statements about some of the things we're going to talk about today, have forward-looking statements. These all involve risk and uncertainty. For more information, see our filings of the SEC, etc., etc., etc. It did, yes. Does that not cover the, we expect to do whatever it is that Mr. Young said they expect to do? So, I think the problem with that is that it's not sufficient or meaningfully cautionary. It was just a general boilerplate statement about, we might make some forward-looking statements. It never said we're going to make forward-looking statements about receivables, for instance. The other thing it said is that you can go to and read our 10-K, our annual report, to go and figure out what forward-looking statements we're talking about. The defendants never suggested that there was anything in the 10-K that would protect the statements. If you go and read the 10-K, there's nothing there, and for our purposes, there's nothing in the record that they pointed to in the 10-K that would suggest that the statements were meaningfully cautionary. So, going back to, you know, to address your question, it has to be meaningfully cautionary. If someone, if a moderator in the beginning says we might make some forward-looking statements, that's not enough to meet the defendants' burden to make forward-looking statements. These arguments were never raised below by the defendants and should not be considered on appeal. Your Honor, I just wanted to move on to this one other thing that I didn't get to, which is, putting aside facts about Mr. Young's belief, the issue here is that all the facts that were pled in the complaint were not considered, and TELABS requires that the analysis has to be holistic and collected, and here we had the confidential witnesses not just giving their opinions about things, they made factual representations. So, for instance, confidential witness 3 said that 50% of all outstanding receivables had been denied by insurers in the beginning of 2018. That now is corroborated by the ultimate write-down that the company took of $72 million. That's a statement of fact. So, given that we have facts like this, and then the other witnesses who, for instance, mentioned that there were improper billing practices being taken place, that insurers had clawed back significant amounts of money because they were unhappy with how the claims were being submitted, or they, for instance, believed that they were not covered by the agreements that Nobilis had, none of those facts were considered, and those facts undermined statements that the defendants had made, whether it was about statements about expectations, or which I really think are statements of opinion, that, you know, we expect to collect 100%, or whether it was other statements about them making efforts towards collecting the receivables. I think in Spitsburg, the court was clear that if you have a confidential witness who is reliable and whose account can be trusted, if that confidential witness's account undermines the statements, then that's enough to sustain the complaint, because the court has to assume that what the confidential witness has said is true at the pleading stage. And here, we only have an instance of one allegation from one confidential witness being credited, and the rest of it being ignored. And I think that becomes problematic, because you're not doing what I believe the Supreme Court requires courts to do, which is to take a holistic approach. And this is not just something that is taken from tele-apps. The circuit has put out a holistic approach. You can correct me if I'm wrong, but I mean, the entire case is based upon uncollectible debts that they were treating as collectible. Is that right? That's the essence of your case. Your Honor, I think the case is about uncollectibility, but it isn't that they were treating it as collectible. It was that they were representing that they could be collected when they had reason to know that they were not collectible. That's what I'm saying. Right. Uncollectibility. Now, you're putting all these debts. I mean, can you assign one objective test to when a person should know that a debt is uncollectible, as opposed to when there is a possibility of collection? Right. So I think... I mean, is the debt three years old? Is the debt a debt of someone who's going bankrupt? Or is there any kind of objective test that you can apply to assure the non-collectibility of the debt so it would constitute science or fraud? So I think to address your question, here we have one confidential witness who said a significant number of these claims were from 2016, which was two years before these false statements were made. So in other words, the debts were two years old, right? And then you have certain witnesses who have said that they were from a decade ago. So for instance, 2004, 5, and 6. Now, if you look at what the company ultimately said in November, it said we're writing off all the debts that were more than 365 days old. So they've given you the standard, which is, if it's more than a decade old, it's not collectible anymore. But what the CWs have said is that on occasion, not only were some of these claims several years old, but in some instances, they were ten years old. I mean, in some instances. I mean, how many was this a significant number of instances? I mean, to constitute absolutes, is science required? Your Honor, I would say yes. If you assume the truth of what you've shown, that it was so overwhelming that it constituted a fraud in terms of their assigning certain debts collectible and not collectible. So, going back to confidential witness threes, a factual allegation that more than 50% of them had been denied by insurers, that was one of the reasons why they became uncollectible. And we know that based on this CW's account, that had already happened in the beginning of 2018. So, Your Honor, to address your question, it's 50% at least. Based on this CW's account. And the total balance was 140 million. So, we know 72 million of it at least was worthless. And that has now effectively been, has come out in this other case, which as you know, is something that we're litigating in the proceedings below. Your Honor, unless there's something else I would like to reserve the rest of my time for. Did you need any more follow-up on that, Judge? Thank you. Thank you, Mr. Jaffer. You have some time for rebuttal. Thank you. Mr. Manning. Good morning and may it please the Court. Rex Manning on behalf of defendants. In this securities fraud case, the plaintiff invokes severe recklessness and circumstantial evidence. And that means that to plead a strong case of scienter, the plaintiff must allege facts in the amended complaint that create a direct connection between individual defendants and those circumstantial bits of evidence. Or, must plead facts sufficient for the court to find that special circumstances exist. Because the complaint has failed to build either bridge, the court should affirm dismissal for failure to plead scientific. Mr. Jaffery repeatedly referred to our decision in Spitzberg. From his description of the case, it sounds like it supports his argument. Can you distinguish that case? Absolutely, Your Honor. So first, I think it's important to note the allegations of the false statements in Spitzberg and how this court described them. And so, this appears at page 685 of the opinion, where the court said the plaintiff did not know when none had occurred or regarding the presence of oil and flowable hydrocarbons when none had been found. And so, those statements are backward-looking with direct contradictions. And the argument that the defendants made there was that somehow what they believed what would occur in the future meant that they did not know or were not reckless in knowing that flowable hydrocarbons had not been found or drilling had not been conducted. And that's different than the allegations in this case. Here, most of the alleged false statements or misleading statements involved what the company expected to collect in the future. Weren't those statements based on some kind of assessment of the status of the accounts receivable? Meaning, if someone's making a statement, well, we expect to collect a hundred percent of these. Doesn't that suggest something about the nature of the accounts receivable? Whereas, if somebody was looking at them and they're really bad, or a lot of them are really bad, you might say, well, we expect to do our best to collect most of them. You see what I'm saying? Isn't there a both forward and backward-looking? Absolutely. And the problem with the argument that plaintiffs raised in this is that there's no facts within the complaint alleging a connection between what the individual defendants were supposed to know in order to make that assessment misleading or false and what information the allegations with respect to Young are somewhat more specific than with respect to the other two defendants because Young appears to have been in a position to know with some granularity what the status of the ARs were because he was there and he was trying to juice up collections. The problem is that the complaint itself contains no specific allegations discussing the who, what, and when of Young's activities in the business office. And this court has faulted complaints in other cases time and again for leaving out such significant and specific allegations. And so, yes, the allegation says that Young was in the business office, but that's as specific as it gets and there are no allegations that specific to any of the other two defendants. So if we focus on what's really missing here, and we can look to a couple of the court's cases to show what allegations would have potentially been sufficient that we don't have here. So, for example, in the Lorman case, which is 565 F. 3rd at 253 and 252, you have specific allegations of a defendant making private admissions about the state of mind at the time, sending a letter to the Board of Directors, emailing other folks, including outside management, having conversations with directors. So you have specific allegations about what the the red flag and in this case we don't have any of those allegations. Mr. Manning, has there ever been a period in the company's history, any period, a quarter, a year, any period, where they collected a hundred percent of the accounts receivable? That allegation either way does not appear in the complaint and I standing here do not have knowledge to tell you. Which allegations? There are no allegations in the complaint suggesting that the company either has collected or has not collected 100% of receivable. I mean, it would be remarkable. It would make it kind of an interesting company. I can't imagine any company that would collect 100% of its accounts receivable. But, I mean, the thing I'm trying to figure out is why we can't just infer that he had to know that wasn't true because no one can collect 100% of their accounts receivable, right? I mean, let me ask it this way. Suppose he, suppose the company had a hundred million dollars in revenue every quarter and he gets on the earnings call and he says, well, we expect next quarter it's gonna be a billion, right? It's been a hundred million every single quarter for the entirety of the company's existence, but next year we expect we're gonna make a hundred, we're gonna make a billion dollars in the quarter. That would be actionable, right? I mean, there'd be no basis for believing that and it's almost fanciful to say it, right? I think it would be actionable if you had specific statements in the complaint that allowed the court to make those inferences. I mean, this court has recognized time and again that it will not strain to make inferences in favor of a plaintiff and we have no doubt that any time in the company's history it did or did not collect. So again, that goes to the heightened pleading standard here that falls on plaintiff to provide specific particular allegations connected to each defendant and specific to what the defendant knew at the time of the alleged misrepresentation. So, that connection is simply missing here. Let me ask you this in terms of Tell Labs and our cases interpreting that standard. Would it be enough to have allegations from which one could draw the inference that not that the defendant knew that these accounts were not collectible, but that he was reckless in making the statement that we could collect 100% of them? In other words, recklessness. Is that a possible avenue towards finding proper allegations? Yes, Your Honor. I believe that some of the questions, I don't know whether that's a question that's still open, but in this circuit and I think most other circuits in the country, even though the Supreme Court hasn't ruled on whether recklessness is enough, everyone treats it as though it is. And so, there's plenty of published cases that require the court to assume that it's possible to plead a case of scienter using recklessness. Right. So, when the district court . . . the district court, you can correct me if I'm wrong because you know this a lot better than I do, but the district court seemed to focus on Young's knowledge, meaning, well, we can't infer that he knew that these accounts were so bad that to make this representation would be actionable. But what about recklessness? In other words, we look at what he probably knew, given his position in the company, given what he was doing, and then he turns around and says, we can collect 100% of them. Does that support an allegation of recklessness? Well, I think the important thing to note there, Your Honor, is that even if the district court somehow did not apply the holistic review correctly, that itself is not reversible error. And that's something that this court suggested in Owens v. Jastrow when it noted that regardless of what the district court had did, this court on de novo review has the opportunity to conduct the holistic review appropriately. And so, even if there was a suggestion . . . Well, tell me why in doing our holistic review we shouldn't come to the conclusion that the allegations here are sufficient to support a finding of recklessness. Because there's a missing connection between Defendant Young, who's at the heart of the case, and also the other defendants as well. And any of the specific information that the confidential witnesses have suggested would make it reckless to think that the company could not collect on any of the receivables. And so . . . I'm going to collect 100%. On 100% of the receivables. So, for example, if you go to other cases in this court . . . So, for example, in the Owens v. Jastrow case, there were allegations that a defendant had met with management before the spinoff of a company, suggesting that the company needed capital. The defendant had discussions after the spinoff, again suggesting that the company needed capital. He later had a meeting to discuss the need of capital. Allegations were adequately stated that the defendant in that point was of Scienter for different reasons in that case. But those types of allegations that while Defendant Young was in the business office, he was meeting with specific people, he was having discussions with specific people, he was sending emails, he received reports, he read letters, none of that is in the amended complaint. There is nothing suggesting that any of the supposed red flags that the defendants were . . . should have been . . . that would make it reckless for any of the defendants to have made or sat there. There is no connection between any of those red flags and anything that Young did in the business office, and there is no other allegation placing any other of the two defendants in the business office discussing anything with the confidential witnesses or even discussing anything with the other folks at Nobilis that the confidential witnesses have identified specifically. And so, that leads me to the point I'd like to discuss about the confidential witnesses themselves. I think there are a few distinctions that the court should draw rather than simply crediting everything that they say wholesale. Both sides agree that in order to give any credit to a confidential witness's statement to begin with, the complaint must allege facts sufficient to support the conclusion that the confidential witness knows what he or she is talking about. And there are four problems with the confidential witness statements in this case. We've already discussed the problem of connection, but there's also the problem of knowledge, there's a problem of timing, and there's a problem of opinion. So starting with knowledge, and we can run down each of those. If you look at Confidential Witness 1, Confidential Witness 1 was a collection specialist, but somehow, according to the allegations, despite being in collections, was responsible for billing. If you look at one of the allegations that Confidential Witness 1 makes, it's about what sales reps and physicians were doing in suggesting to patients. There are no specific facts or particular facts alleged that would show why Confidential Witness 1 was privy to conversations between physicians and sales reps. The same is true for the allegation from Confidential Witness 1 that nurses and others with licenses were leaving the company. Again, there's no allegations of specific facts that would show why Confidential Witness 1 knew that any of those things were happening, or the reasons behind why nurses were allegedly leaving. The same is true for Confidential Witness 3, who is a financial clearance specialist, who primarily communicated with patients about out-of-network reimbursements. Confidential Witness 3 purports to know the reason behind why half of the outstanding claims in Nobilis were outstanding, but there are no specific factual allegations that Confidential Witness 3 was exposed to any information that would allow him or her to draw conclusions about half of the outstanding claims, particularly when, from his or her job description, the witness was not working with accounts receivables or large amounts of the claims. And again, if we look at Confidential Witness 2, a collection specialist, but who was somehow privy to knowledge of what physicians were encouraging patients to do. So those suggestions, those gaps in knowledge, suggest that the court should not place any emphasis, and I don't think that the district court did either, on what the Confidential Witnesses are stating, because they simply weren't in a position to know the facts that they allege that they know. Another issue is timing. Confidential Witness 1 was with Nobilis from 2016 to August 2018, which overlaps with only a fraction of the period that's at issue here. And Confidential Witness 2 supposedly corroborates everything that Confidential Witness 1 said, but the time frame that Confidential Witness 2 was at the company ended before the class period even began, which suggests that what Confidential Witness 1 was talking about predated any of the alleged misrepresentations in this case. And moving on finally to the opinions, I think it's important to note that a lot of the allegations specific to collectibles and accounts receivables are missing. If you treat each allegation as a syllogism, they are missing the minor premise. So there are three main allegations here, that because an account was old, it was uncollectible, that because an account came from split billing, it was uncollectible, and that because Nobilis had not appealed, it was old, split billing, not appealed, as the major premise. The conclusion that it's not collectible is also there, but there are no facts establishing the minor premise, that is that because an account is old, it is uncollectible, that because an account was split billed, it is uncollectible, and that because an account was not appealed in the first place, that it is uncollectible. Why is it the minor premise that this is prior to this earning call, the crucial earning call, first quarter of 2018, there are chronic internal control problems, gap violations, we're having all this fight about this accounting standard, the new accounting standard, and what it's going to do to revenue. So that's at time zero. Then there's the call where we say we're gonna have a hundred percent collectible, miraculously, no one can figure out how, but that's what we're gonna do, we expect to do a hundred percent, and then that's time one. And then at time two, you have a seventy two million dollar write-off, right? So it seems obvious, doesn't it, that there is some sort of problem, we say we fixed it, we clearly didn't fix it. So, I mean, it seems obvious that those accounts, some seventy two million dollars worth, were not collectible, right? Isn't that alleged properly? Yeah, I think that there are two issues with that. The first is that nowhere in the amended complaint is there a specific allegation to the seventy two million dollars. Instead, the plaintiff, in his opening brief on appeal, asks you to go outside the record to look at allegations from a different complaint, which is patently improper. The court has not looked at what's in this complaint, not what's in briefs in this case, not what's in other complaints and other lawsuits in different jurisdictions. And so, on that note, I think that one of the allegations was that in the November 9th call, Nobilis had suggested that it was going to write off every single dollar, $365 plus. I believe that's what my friend on the other side said here moments ago, but that's not what the complaint alleges. Instead, the complaint alleges simply that the statement was that Nobilis would make a significant adjustment. And so then, I think the other problem that you get into is there is, if even if we were to credit that some amount was written off later down the line, you have to rely on at least partially the benefit of hindsight to reach the conclusion that simply because something was written off at time two, the folks who were involved during time one must have known that it was impossible to collect on what they were representing the company would collect on. And so, when you take away the benefit of hindsight, which the court has said time and again you cannot allege fraud by hindsight, and you focus on what was happening at time one and time zero, there are no allegations specific to any individual defendant as to what knowledge he knew, what information he was exposed to, related to time zero and related to time one. And so, you know, in a different scenario, maybe things turn out differently, but focusing on the allegations in the complaint, in this case, as amended, there's nothing there that allows you to reach that inference. Instead, again, Your Honor, I think that you would need to strain to reach those inferences, and that's something that the court has decided that it will not do, and said many times is inappropriate in a case like this, given the heightened pleading standard. And so, I want to just jump back very quickly to focus on Defendant Young. I think everyone agrees he's the heart of the case, and the allegation that his mere presence in the business office means that he must have known what was going on. We've talked about the lack of a connection, but I think the other thing that is important for the court to consider is that there are two non-culpable inferences on one side versus one culpable inference on the other side. And this court has suggested in the Flotec opinion at page 983 and the Shaw opinion at page 538 that when statements are subject to multiple interpretations, that suggests a finding against Sienter, not a finding of a strong case of Sienter. And I think that that logic applies with force here, and you can reach that conclusion if you apply a modified version of the hypothetical that Justice Scalia submitted in his concurring opinion in the Telwab's opinion. So in that case, Justice Scalia was complaining, suppose for example, that a jade falcon had been taken from a room, and that there were only two people who had access to the room during that time frame, person A and person B. And his complaint with the majority opinion was that you could not say in that circumstance that the jade falcon somehow meant that there was a strong inference that B took the falcon, because there is just as strong of an interest as an inference that A took the falcon. But here, because you have two competing non-culpable interests, suppose for example that there were three people who had access to the room, A, B, and C. Now when you're assessing whether B took the falcon or B did not take the falcon, there's a one-in-three chance without any other facts pleaded suggesting what any of the people were doing, there's only a one-in-three chance that it was B versus a two-in-three chance that it was not B. And so that type of logic, I think, applies with force here, where you have multiple interpretations that Young was simply mistaken about the collectability of the accounts receivable, or that Young knew of the importance and was there to stimulate efforts on one side of the scale versus on the other side of the scale, what plaintiffs describe as the allegation that he somehow knew that nothing was going to be collected. I'm trying to think if I have any more points to make before I sit down. One last point on gap, I think my friend on the other side suggested that the inner voice opinion stands for the proposition that it's never appropriate for the court to determine whether an allegation of a gap violation is plausible, and I think that overstates what the court there held. If you were to go and look at that opinion, you would see that the court encountered a complaint that came with it an expert witness affidavit stating facts about the gap violation, and when the court was describing why it was incorrect for the district court below to look at whether gap had been violated or not, it quoted an Eighth Circuit opinion that said that at the pleading stage, we shouldn't get down to a battle of the experts, but we don't have any expert report here. Instead, we have allegations in a complaint that are unsubstantiated. It doesn't make it a fact dispute. It makes it a dispute over whether the allegations about gap are plausible, and as this court has done, I believe it is in the JASRA opinion. It is noted that a plaintiff is simply incorrect on how gap applies, and so I don't think that the inner voice case stands for what the plaintiff suggests that it stands for, and so, Your Honors, unless you have any other questions, we rest on our briefs on the rest of the case, and we ask that you affirm. Thank you. Thank you, counsel. Mr. Jaffrey, you have three minutes for rebuttal. Thank you, Your Honor. I just wanted to say, in terms of the claim that somehow the circuit has not said that accounting questions cannot be resolved, you know, at the pleading stage, it's not just bearing verses into voice. It's also set it in Whole Foods Market, which is a 2018 case. I think the only instance that at least I know of where the circuit actually looked at the gap rules and said, you know, we understand that this is usually not supposed to be decided on a motion to dismiss, but here it doesn't appear that there is a gap violation was Owen versus Jastrow, where the Financial Accounting Standard Board had taken a position that was opposite to what the plaintiff said the accounting rule meant. Here, the Financial Accounting Standard Board clearly said that the receivables are not affected by ASC 606, yet that was never considered below, and the defendants obviously ignored it. So just to give you a sense of, you know, the exceptions that are made where the court actually looks at the gap rules itself, as opposed to the standard rule, which is this is a factual issue that you don't decide on motions to dismiss. The other thing I just wanted to quickly point out to the court is it seems strange to me that the dismissal is supposed to be defended here based on the court crediting confidential witness tree statement that Young went to the business office and then inferring that this meant that he went to stimulate the collections effort. But now it seems as if the defendants are not even happy with that. They want additional information based on what happened over there. I mean, the fact of the matter is that inference was adopted by the district court. They are in this court defending that. So it seems strange to me that now they're saying they're not even happy with that, and instead we should give additional facts about what kind of conversations Mr. Young had, whether he had any meetings with anybody, which is another way of saying we should produce smoking gun evidence, which TALABS doesn't require us to do, and circumstantial evidence is sufficient at the pleading stage, this is not a trial, to plead scienter. And so it just seems strange that now they're not happy with the district court's own inferences, which were drawn in their favor, and they want something even more which is not required by case law. I think it sort of defeats the whole purpose of saying you can support an inference of scienter based on circumstantial evidence, and then accept that Mr. Young went there and knew about the collection effort and understood their importance, but somehow that's not sufficient to get beyond a motion to dismiss. Finally, Your Honor, in terms of the confidential witnesses, there's no problem with timing. There is plenty of case law from both the Second and Ninth Circuit that I can think of at the moment. I'm not sure about the Fifth, but it doesn't matter. They don't have to be there throughout, and this case shows why. For instance, confidential witnesses said that 50% of the claims were denied in February of 2018. Obviously, that's the most important fact. Thank you very much. Thank you. We have your argument. Thank you to both for a well-presented argument. The court will stand in temporary recess while we, our next case we will hear via Zoom. Am I right, Kim? And then we will reconvene in